UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIMBERLY L. WIGGINS,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

                          /

Case No. 1:12-cv-487
Hon. Hugh W. Brenneman, Jr.

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI).

Plaintiff was born on January 9, 1970 (AR 154).[1] She alleged a disability onset date of January 10, 2007 (AR 154). Plaintiff completed one year of college and received special job training as a nurse's aide (AR 164). She had previous employment at a nursing home in housekeeping and as a nurse's aide (AR 160). Plaintiff identified her disabling conditions as: chronic asthma; chronic obstructive pulmonary disease (COPD); depression; and restless leg syndrome (AR 159). The administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on July 12, 2010 (AR 14-25). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

---

[1] Citations to the administrative record will be referenced as (AR "page #").

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th

Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007), citing *Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health*

*and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. The ALJ initially found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of January 10, 2007 and that she met the insured status requirements under the Act through December 31, 2011 (AR 16). Second, the ALJ found that plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine; asthma; obesity; and depressive/mood disorder (AR 16). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 12). Specifically, plaintiff did not meet the requirements of Listings 1.04 (disorders of the spine), 3.03 (asthma) or 12.04 (affective disorders) (AR 17).

The ALJ decided at the fourth step that:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) subject to: no exposure to concentrated levels of pulmonary irritants; and only occasional contact with coworkers, supervisors and the general public.

(AR 18). The ALJ also found that plaintiff was unable to perform any of her past relevant work (AR 24).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled, light jobs in the regional economy (defined as western Michigan) (AR 24-25). Specifically, plaintiff could perform the following jobs in the regional economy: mail clerk (615 jobs); food preparation worker (1,259 jobs); and packer (7,247 jobs) (AR 25). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from January 10, 2007 (the alleged onset date) through July 12, 2010 (the date of the decision) (AR 25).

### III. ANALYSIS

Plaintiff raised three issues on appeal:

### A. The ALJ erred in discounting the only opinions from an examining physician.

Plaintiff contends that the ALJ failed to properly consider the opinions of a treating physician, Jennifer Hultman, M.D. A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations"). Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20

5

C.F.R. §§ 404.1527(c)(2) and § 416.927(c)(2). An ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992).

In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

On May 13, 2010, Dr. Hultman prepared a "Medical provider's assessment of patient's ability to do physical work-related activities" (AR 456-59). Among other things, the doctor found: that plaintiff could only sit, stand or walk for five minutes or less without interruption; that plaintiff could occasionally lift and carry up to 5 pounds; that plaintiff could never crawl or climb ramps, stairs, ropes or scaffolds; that plaintiff could only occasionally reach above her shoulders, squat, knee and crouch; that plaintiff could never work at unprotected heights, near dangerous moving machinery, in extreme temperatures, in humidity or wetness, near pulmonary irritants or with vibrations (AR 458).

The ALJ adopted some of Dr. Hultman's restrictions, but determined that other restrictions were not supported by the record:

> On May 13, 2010 Dr. Hultman completed an assessment indicating severe restrictions, including: an inability to sit for more than 5 minutes at a time, or stand

6

>and walk for more than 3 minutes; the need to change positions every 3 to 5 minutes; and the need for a cane or walker for stability. She indicated that these activities had been limited since approximately March 2008. She also opined that since approximately March 2009, the claimant was unable to lift more than 5 pounds unassisted or ever stoop or climb ramps/stairs. Dr. Hultman also indicated that the claimant demonstrated slightly diminished strength in dorsiflexion of the toes bilaterally, at 4+/5. *See* 26F.
>
>After careful consideration, significant weight cannot be given to Dr. Hultman's assessments (specifically the one dated May 2010) to the extent that they describe the capacity for less than light work. It should be noted, however, that the assessment(s), completed in August 2009 are not entirely inconsistent with the capacity to perform light work. Light work, as opposed to medium or heavy work, can usually be accomplished with only occasional postural movements such as stooping (see SSR 85-15), and the ability to sit, stand or walk continuously for up to 2 hours is compatible with the ability perform these activities for 6 hours over the course of an 8 hour day, with regularly scheduled breaks.
>
>Dr. Hultman's 2010 comments cannot be credited, because they contradict her earlier opinion(s) as well as comments in her medical records. For example, while she indicated an inability to sit, stand or walk for more than a few minutes, her records reflect that she has encouraged the claimant to be active. In October 2008 Dr. Hultman encouraged 60 minutes of physical activity daily, as well as healthier eating habits. 20F/23. Dr. Hultman indicated on the March 2010 assessment that the claimant required an assistive device for walking and the claimant also asserted at the hearing that she had been prescribed a quad cane, but the evidence does not show findings of ataxia, motor weakness (other than the "mild" motor weakness, at 4+/5, that Dr. Hultman notes on the form but which is not documented in the claimant's records), instability, sensory loss or other findings which would warrant the need for an assistive device. During her treatment visits it was not noted that the claimant required a cane or other assistive device, and no significant motor abnormalities were documented. In terms of her ability to sit, the record does not support a finding that she is unable to sit for more than 4 to 5 minutes. She was observed to move around at the hearing and she has described some difficulty sitting for prolonged periods, but it seems likely that if the claimant were unable to sit still for even 5 minutes clinicians (during physical or mental evaluations) would have made note of this.

(AR 22-23).

The record reflects that the ALJ considered Dr. Hultman's opinions and gave good reasons for not crediting the doctor's opinions. *See Wilson*, 378 F.3d at 545. Specifically, the doctor's extreme restrictions as set forth in her May 13, 2010 assessment were inconsistent with both

7

her previous assessment and plaintiff's record of treatment. Accordingly, plaintiff's claim of error will be denied.

### B. The ALJ erred in failing to assess Ms. Wiggin's credibility as required under Social Security Regulations and Policy.

Plaintiff contends that the ALJ failed to evaluate her credibility under 20 C.F.R. § 404.1529(c)(2) and (3), as well as Social Security Ruling (SSR) 96-7p ("Evaluation of symptoms in disability claims: assessing the credibility of an individual's statements"). The applicable regulations, 20 C.F.R §§ 404.1529(c)(3) and 416.929(c)(3), provide that an ALJ will consider factors relevant to a claimant's symptoms including: (i) the claimant's daily activities; (ii) the location, duration, frequency and intensity of the claimant's pain; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness and side effects of any medication the claimant takes or has taken to alleviate her pain or other symptoms; (v) treatment, other than medication, the claimant receives or received for relief of her pain or other symptoms; (vi) any measure the claimant uses or has used to relieve her pain or other symptoms; and (vii) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3).

An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531. "It [i]s for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." *Heston*, 245 F.3d at 536, *quoting Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The threshold for overturning an ALJ's credibility determination on appeal is so high, that in recent

years, the Sixth Circuit has expressed the opinion that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 113 (6th Cir. 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact . . . [w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility." *Sullenger v. Commissioner of Social Security*, 255 Fed. Appx. 988, 995 (6th Cir. 2007). Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

After providing a comprehensive history of plaintiff's medical records (AR 18-21), the ALJ provided the following credibility determination:

> Overall, the claimant's records reflect a variety of symptoms, the most prevalent of which are respiratory difficulties, back pain (and on a less consistent basis pain in other joints) and depression. All of these complaints have been taken into account in the claimant's above described residual functional capacity, but to the extent that she asserts that she is more limited her allegations are not entirely credible.
>
> The claimant's respiratory complaints are considered credible, as she has documented persistent asthma as well as sinusitis. The claimant's shortness of breath has also been considered in finding her limited to performing light work (i.e., lifting no more than 20 pounds occasionally and 10 pounds frequently). She therefore should not be required to tolerate exposure to concentrated amounts of pulmonary irritants. However, her complaints of respiratory symptoms have waxed and waned, and her symptoms have often been responsive to treatment. During recent evaluations, even when she complained of respiratory symptoms, her lungs were clear and her breath sounds were normal.
>
> Turning to the claimant's back pain, though her complaints have been somewhat persistent, the objective findings have generally been negative other than tenderness, some pain with range of motion and (at times) hyperactive reflexes in the right lower extremity. Motor strength and sensation have been normal. She has also complained of joint pain, but these complaints have been somewhat sporadic and intermittent and prevalent primarily after courses of steroids. The record as a whole does not support a finding that she would be unable to sit, stand and walk at least 6

>hours of an 8 hour day, with normal work breaks (i.e., morning, lunch and afternoon or the equivalent).
>
>\* \* \*
>
>It appears that the claimant has been treated for her depression primarily by her regular physician, and when she has been assessed psychiatrically she demonstrated essentially normal cognition, thought processes and mental status. She described significantly limited daily activities and a lack of motivation, but it is unclear if she relates this to her depression or her perceived physical limitations. On her Function Report, she described difficulties primarily due to shortness of breath and she did not indicate any mental difficulties. Specifically, she stated that her illnesses affected her ability to walk and climb stairs, but she did not indicate problems with activities such as memory, concentration, understanding, completing tasks, following instructions or getting along with others. *See* 6E. Possible sedating side effects of medication have been considered, but the claimant generally has not complained to treating physicians of problematic side effects. Nonetheless she does have a documented depressive disorder, and due to her depression, anxiety and tendency to isolate she should not be required to interact more than occasionally with coworkers, supervisors and the general public.

(AR 21-23).

The record reflects that the ALJ reviewed the factors listed in §§ 404.1529 and 416.929 (AR 18). The ALJ traced plaintiff's medical history, treatment, and daily activities, and gave examples to demonstrate that plaintiff's testimony regarding her alleged disabling symptoms was not credible. Plaintiff has not presented a compelling reason to disturb the ALJ's credibility determination.

>**C. The ALJ failed to pose to the VE [in] his hypothetical whether adequate jobs existed when the claimant could not sit, stand, or walk effectively or perform upper arm movements.**

Plaintiff contends that the ALJ posed a flawed hypothetical question to the vocational expert (VE), by failing to include the limitations regarding her inability to perform work functions

10

as determined by Dr. Hultman's "Physical Capacities Assessment" dated August 20, 2009 (AR 339)[2] and her "Medical provider's assessment of patient's ability to do physical work-related activities" dated May 13, 2010 (AR 456-59). Plaintiff, however, does not address any particular limitation which the ALJ failed to address.

An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 231 (6th Cir. 1990). *See also Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 118 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals"). Because the purpose of the hypothetical question is to elicit testimony regarding a claimant's ability to perform other substantial gainful activity that exists in the national economy, the question does not need to include a listing of the claimant's medical diagnose. "[A] hypothetical question need only reference all of a claimant's limitations, without reference to the claimant's medical conditions." *Webb*, 368 F.3d at 632.

As discussed, the ALJ's RFC did not adopt all of the limitations set forth by Dr. Hultman. After evaluating Dr. Hultman's limitations, the ALJ looked to those limitations found by

---

[2] The Physical Capacities Assessment in the administrative record (AR 339) is illegible. Plaintiff has attached a legible copy of that assessment with her brief. *See* Assessment (docket no. 13-1 at p. 2).

11

the non-examining agency physician, J. Greco, M.D. on February 29, 2008 (AR 319-26):

> The non-examining State Agency medical consultant opined that the claimant was capable of performing a wide range of medium work. [S]*ee* 13F. This assessment is not unreasonable considering the objective findings, but due to the combination of the claimant's impairments (specifically her respiratory problems and her physical pain) it is reasonable that she not be required to lift more than 20 pounds occasionally and 10 pounds frequently. These limitations also take into account the claimant's obesity, in accordance with SSR 02-1 p, because obesity would be likely to contribute to the shortness of breath with exertion and carrying up to 50 pounds may cause increased discomfort considering that the claimant is already carrying excess weight.

(AR 23).

The ALJ's hypothetical question posed to the VE included the plaintiff's RFC, which took into account her respiratory problems, pain and depression by limiting her to light work subject to no exposure to concentrated levels of pulmonary irritants and only occasional contact with coworkers, supervisors and the general public (AR 21-23, 46). The ALJ's hypothetical question included those limitations which the ALJ found credible. *See Stanley*, 39 F.3d at 118; *Blacha*, 927 F.2d at 231. Accordingly, plaintiff's claim of error will be denied.

### IV. OTHER ISSUES

#### A. Psychological assessment

In the conclusion of her brief, plaintiff refers to the "Catholic Social Services psychological assessment" and objects to the ALJ's evaluation of that assessment. Plaintiff's Brief at p. 8. Plaintiff is apparently referring to the following portion of the ALJ's decision:

> In October 2009 the claimant underwent a psychological assessment at Catholic Charities, and she reported symptoms including increased appetite, insonmia, chronic pain, lack of motivation, anxiety, depressed mood, low energy or lethargy, frequent crying, poor concentration, worrying, hopelessness and overspending. On mental status examination she expressed no suicidal or homicidal ideation, she was well groomed, cooperative and calm, her speech was appropriate, there were no thought abnormalities, and her orientation and cognition were intact. Her concentration and recent memory were said to be impaired, though her attention,

12

>   insight and judgment were intact/age appropriate. She had a mild impulse control deficit. The intake social worker assessed recurrent depression and indicated a GAF of 50 (according to the DSM-IV, a GAF of 41-50 is indicative of serious symptoms OR any serious impairment in social, occupational, or school functioning). *See* 27F.

(AR 21).

In her brief, plaintiff notes that ALJ found this assessment to be "at odds with other opinions of record," apparently referring to the following portion of the ALJ's decision:

>   The non-examining State Agency psychological consultant opined that the claimant's mental conditions were non-severe, causing no more than mild functional limitations. See 11F. Dr. Oberlander, the medical expert psychologist at the hearing, disagreed with this assessment and indicated that the claimant had moderate limitations. Dr. Oberlander had the opportunity to review a more complete record as well as observe the claimant and listen to her testimony, and his opinion is given greater weight. The GAF of 55 indicated by the psychological consultative examiner also signifies moderate functional impact. The GAF of 50 indicated on a recent assessment cannot be given significant weight because it is from a social worker rather than an acceptable medical source, and it is also at odds with other opinions of record as well as the relatively normal mental status findings. Further, as indicated above, even the claimant's allegations are consistent with a finding that she is limited primarily due to physical impairments, and that her depression and anxiety arise in significant part due to her perceived physical limitations.

(AR 23-24).

Plaintiff contends that the ALJ did not address evidence of her treatment for depression and anxiety that supports the Catholic Social Services [Catholic Charities] evaluation, as reflected in Exhibits 20F and 21F. Plaintiff's Brief at p. 8. As discussed, *supra*, the ALJ acknowledged that plaintiff suffered from depression and accommodated this condition in the RFC by limiting her contact with coworkers, supervisors and the general public (AR 18). To the extent that plaintiff contends that the ALJ improperly evaluated her mental impairment, she has presented only a cursory argument with no citations to specific medical records or legal authority. The Court is not required to scour the record for potential arguments on plaintiff's behalf. *Browder v. Ankrom*,

13

473 Fed. Appx. 499, 500 (6th Cir. 2012). "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). This is essentially the situation here and the court deems this argument waived.

### B. New evidence

Plaintiff's brief included new evidence, referred to as "Proposed 28F," which consists of an "Employee Reprimand Log Sheet" with entries from March 6, 2000 through February 15, 2007. *See* docket no. 13-1 at pp. 3-4. This document is not part of the administrative record. When a plaintiff submits evidence that has not been presented to the ALJ, the court may consider the evidence only for the limited purpose of deciding whether to issue a sentence-six remand under 42 U.S.C. § 405(g). *See Sizemore v. Secretary of Health and Human Services*, 865 F.2d 709, 711 (6th Cir.1988) (per curiam).[3] In a sentence-six remand, the court does not rule in any way on the correctness of the administrative decision, neither affirming, modifying, nor reversing the Commissioner's decision. *See Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). Rather, the court remands because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and the evidence might have changed the prior proceeding.

The standard in determining whether to remand a claim for the consideration of new evidence is governed by statute:

> The court . . . may at any time order the additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence

---

[3] Section 405(g) authorizes two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing the decision of the Secretary (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the Secretary (sentence-six remand). *See Faucher v. Secretary of Health and Human Services*, 17 F.3d 171, 174 (6th Cir. 1994).

>which is *material* and that there is *good cause* for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g)(emphasis added). Since plaintiff has neither requested a sentence-six remand nor addressed the materiality and good cause requirement under 42 U.S.C. § 405(g), there is no basis to consider this evidence.

## V. CONCLUSION

The ALJ's determination is supported by substantial evidence. Accordingly, the Commissioner's decision will be affirmed pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion shall be issued forthwith.


Dated: September 20, 2013      /s/ Hugh W. Brenneman, Jr.
                               HUGH W. BRENNEMAN, JR.
                               United States Magistrate Judge